**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN GENE HANSEN,

    Defendant.

No. CR13-3010-MWB

**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND ............................................... 2*
   *A.  Procedural Background ......................................................... 2*
   *B.  Factual Background ............................................................... 4*

*II. LEGAL ANALYSIS .................................................................................. 6*
   *A.  Standard Of Review ................................................................ 6*
   *B.  Objections To Report And Recommendation ..................... 12*
      *1.  Was Deputy Radmaker's noncompliance with Iowa law deliberate and intentional? ............................................ 12*
      *2.  Does Leon's Good Faith Exception Apply? ....................... 15*

*III. CONCLUSION ..................................................................................... 16*

## I. INTRODUCTION AND BACKGROUND

### A. *Procedural Background*

On March 27, 2013, an Indictment was returned against defendant Ryan Gene Hansen, charging him with conspiracy to distribute 500 grams or more of a substance or mixture containing methamphetamine which contained 50 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and possessing with intent to distribute a substance or mixture containing methamphetamine which contained 5 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Defendant Hansen filed a motion to suppress in which he seeks to suppress evidence seized as a result of the placement of a Global-Positioning-System ("GPS") tracking device on his automobile, evidence found during a search of his automobile on March 16, 2013, and any statements he made to law enforcement officers on that date. Hansen contends that the installation of the GPS devices was unlawful because it occurred after the expiration of the initial warrant authorizing that installation. Second, he argues that both the warrant authorizing installation of the GPS device on his automobile and the warrant extending the deployment of the GPS device were unlawful because the law enforcement officer applying for the warrants was not authorized to do so under Iowa law. Third, Hansen argues that, under Iowa law, the warrants could not authorize the gathering of information outside of Kossuth County, the county where they were issued. Fourth, he contends that the warrants were invalid because they were not supported by probable cause. Finally, Hansen argues that the *Leon* good-faith exception to the exclusionary rule, *see United States v. Leon*, 468 U.S. 897 (1984), should not apply because law enforcement officers could not have acted in good faith reliance on the warrants.

The prosecution filed a timely resistance to Hansen's motion. Hansen's motion to suppress was referred to United States Magistrate Judge Leonard T. Strand, pursuant

to 28 U.S.C. § 636(b). On June 5, 2013, Judge Strand conducted an evidentiary hearing and subsequently filed a Report and Recommendation in which he recommends that Hansen's motion to suppress be denied. In his Report and Recommendation, Judge Strand concluded that the initial warrant, authorizing installation of the GPS device on Hansen's automobile, was executed within ten days of its issuance and therefore was not void at the time of its execution. Judge Strand also found that, under Iowa law, once a GPS device is installed by a law enforcement officer, it may be monitored regardless of whether the target vehicle leaves the county of issuance or the state of Iowa. Judge Strand further concluded that the deputy who applied for both the warrant authorizing installation of the GPS device on Hansen's automobile and the warrant extending the deployment of the GPS device was unauthorized to do so under Iowa law. As a result, Judge Strand found that both warrant applications were made, and both warrants were issued, in violation of Iowa law. However, Judge Strand further determined that the deputy's failure to comply with state law did not result in prejudice and was not intentional and deliberate. Thus, Judge Strand determined that the procedural violation of Iowa law did not trigger the exclusionary rule and that the validity of the warrants was governed by Fourth Amendment standards. Applying those standards, Judge Strand found that probable cause supported issuance of the GPS warrants. Alternatively, Judge Strand concluded that if the GPS warrant applications were not supported by probable cause, the *Leon* good-faith exception to the exclusionary rule applies because the law enforcement officer obtaining the warrants acted in reasonable reliance on the state magistrate's determination of probable cause for issuance of the warrants. Therefore, Judge Strand recommended that Hansen's motion to suppress be denied.

Defendant Hansen has filed objections to Judge Strand's Report and Recommendation. The prosecution filed a timely response to Hansen's objections. I,

therefore, undertake the necessary review of Judge Strand's recommended disposition of Hansen's motion to suppress.

## B. *Factual Background*

In his Report and Recommendation, Judge Strand made the following factual findings:

> On December 17, 2012, Deputy Jacob Radmaker received information from a confidential informant. The informant stated Mykey Wolf of Algona, Iowa, was going to buy an ounce of crystal methamphetamine ("ice") for $2000 to $2200 from a male coming from Minnesota and that the transaction was to take place at Wolf's residence. The informant stated the male coming from Minnesota previously lived in Kossuth County, used to drive a white Dodge Durango and recently was released from prison.
>
> On December 19, 2012, the informant told Radmaker the name of the male coming from Minnesota was Ryan and that Ryan was driving a white Chrysler 300 with 22-inch rims. The informant stated Ryan drove to the Wolf residence from Minnesota in the Chrysler, arrived around 04:30 on December 19, 2012, and sold Wolf an ounce of "ice" for $2300. The informant also stated Ryan usually carries six to ten ounces of "ice" when he comes down from Minnesota and was selling it all over.
>
> On December 28, 2012, the informant forwarded to Radmaker a text that, according to the informant, had been sent to the informant by Ryan. The text stated: "Well its been 2300 for an O so 9'bs for 2500." Radmaker interpreted this to be a statement that the price for nine "8-balls" of methamphetamine would be $2500.
>
> Radmaker compared information from the informant with other information known to or discovered by Radmaker to conclude that the suspected drug dealer was Ryan Hansen. Hansen is from the Algona area, previously drove

a white Dodge Durango Iowa license plate 453BNS, had been recently released from prison and was then driving a white 2007 Chrysler 300 with 22-inch rims Iowa license plate 478ZZC. Radmaker testified that Hansen's vehicle is very unique because of the large rims and other aftermarket modifications. Indeed, Radmaker stated that there is no other vehicle like it in the area.

Radmaker and Larson determined that installing and monitoring a GPS device on Hansen's vehicle would be useful to their investigation. The Kossuth County Sheriff's Office had never previously sought a search warrant for authorization to install and monitor a GPS device. Larson testified that this situation presented the office's first opportunity to use such a device after the United States Supreme Court's decision in *United States v. Jones[,* 132 S. Ct. 945 (2012)].

On January 8, 2013, Radmaker submitted an application (including an affidavit) for a search warrant to install and deploy a GPS tracker on Ryan Hansen's vehicle (described throughout as a white 2007 Chrysler 300 with Iowa license plate #478ZZC). *See* Ex. 1. This application will be referred to herein as the "first application." On the same day, an Iowa judicial magistrate approved the search warrant application and issued the requested warrant (hereafter the "initial GPS warrant"). The magistrate documented, by an endorsement, sworn additional oral testimony from Radmaker. *Id.* On either January 18 or 19, 2013 (the date of installation is disputed), Larson installed the GPS tracking device on the subject vehicle. From January through March 4, 2013, Radmaker monitored and documented receipt of data from the GPS tracking device.

On March 4, 2013, Radmaker submitted another application (again including an affidavit) for a search warrant to extend the installation and deployment of the GPS tracker on Ryan Hansen's vehicle. *See* Ex. 2. This application will be referred to herein as the "second application." On the same day, the same magistrate

5

approved the second application and issued the requested warrant (hereafter the "renewed GPS warrant"). The magistrate again documented, by an endorsement, sworn additional oral testimony from Radmaker. *Id.* From March 4, 2013, through March 16, 2013, Radmaker monitored and documented receipt of data from the installed GPS tracking device on the requested vehicle.

Both applications, including the affidavits, described the vehicle at issue as a white 2007 Chrysler 300, IA license # 478ZZC. The first application also included a photograph of the vehicle, which Radmaker obtained from Hansen's Facebook page. However, both warrants contain an internal inconsistency concerning the license plate number. The first paragraph of each states there is proof that said vehicle (with the license plate number noted above) has been or will be used in furtherance of drug trafficking. However, the second paragraph of each authorizes installation of the GPS tracker on a vehicle with that same description but with Iowa license plate number 150YLC. *See* Exs. 1 and 2. Radmaker testified that he made this error while drafting the proposed warrants and that license plate number 150YLC has nothing to do with this investigation.

On March 16, 2013, several law enforcement officers conducted a traffic stop of Ryan Hansen's vehicle, locating and seizing evidence. After being advised of his *Miranda* rights, Hansen allegedly made incriminating statements.

Report and Recommendation at 3-5 (footnotes omitted). Upon review of the record, I adopt all of Judge Strand's factual findings.

## II.   LEGAL ANALYSIS

### A.   *Standard Of Review*

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is

compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to me that there is a distinction

8

between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard

9

of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. See *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and

As noted above, Hansen has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Hansen's motion to suppress.

---

recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

### B. Objections To Report And Recommendation

### 1. Was Deputy Radmaker's noncompliance with Iowa law deliberate and intentional?

Hansen's central objection is directed at Judge Strand's analysis under *United States v. Freeman*, 897 F.2d 346 (8th Cir. 1990). In *Freeman*, the Eighth Circuit Court of Appeals held that a "fundamental" violation of a state procedural rule for obtaining a search warrant required suppression of evidence but that a "non-fundamental" procedural violation of such a rule required suppression only where:

> "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or
>
> (2) there is evidence of intentional and deliberate disregard of a provision in the Rule."

*Id.* at 350 (quoting *United States v. Luk*, 859 F.2d 667, 671 (9th Cir. 1988) (quoting in turn *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980)) (internal quotation marks omitted).

Hansen objects to Judge Strand's finding that Kossuth County Deputy Sheriff Jacob Radmaker's noncompliance with Iowa law, in applying for the warrants, was not deliberate and intentional. Hansen notes that under Iowa law only a "special state agent" may apply for a warrant authorizing placement of a GPS device, *see* IOWA CODE § 808B.5(12), and it is uncontested that Deputy Radmaker was not a "special state agent."[2] *See* IOWA CODE § 808B.1(10). Thus, Hansen argues that Deputy

---

[2] With respect to warrants authorizing the installation of GPS devices, the Iowa Code provides that:

> A special state agent may make application to a judicial officer for the issuance of a search warrant to authorize the placement, tracking, or monitoring of a global positioning device, supported by a peace officer's

12

Radmaker's noncompliance with Iowa law in applying for the warrants must be considered deliberate and intentional. I disagree. From my de novo review of the record, I find that there is no evidence that Deputy Radmaker acted in intentional and deliberate disregard of Iowa law when he applied for the GPS warrants. To the contrary, the record supports the conclusion that Deputy Radmaker thought he was complying with the law when he applied for the warrants. It is undisputed that the investigation here presented the sheriff department's first application for a GPS warrant after the United States Supreme Court held, in *United States v. Jones*, 132 S. Ct. 945, 949 (2012), that the installation and monitoring of a GPS device constituted a "search" under the Fourth Amendment. *See Jones*, 132 S. Ct. at 949. Kossuth County Chief Deputy Sheriff Nick Larson testified that while the sheriff's department had used GPS devices before the *Jones* decision, it had not applied for warrants to do so. There is no evidence in the record that either Chief Deputy Larson or Deputy Radmaker knew that, under Iowa Code § 808B.5(12), only a special state agent could apply for a GPS warrant. Rather, the evidence, including the form of the warrant applications, demonstrates that Deputy Radmaker assumed, incorrectly, that a warrant application to install GPS devices was governed under the same rules and requirements as other

---

> oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the special state agent's application, and probable cause for believing the grounds exist. Upon a finding of probable cause to issue such a warrant, the judicial officer shall issue a warrant, signed by the judicial officer with the judicial officer's name of office, directed to any peace officer, commanding that the peace officer place, track, or monitor the global positioning device.

IOWA CODE § 808B.5(12). "Special state agent" is defined as "a sworn peace officer member of the department of public safety." IOWA CODE § 808B.1(10).

search warrant applications, and that he was authorized to apply for and execute the GPS warrants.

The facts here are very similar to those in *Freeman*. That case involved a special agent for the Missouri Department of Revenue. The special agent was authorized under Missouri law to investigate possible violations of state law related to automobile tampering, but was not a state "peace officer." *Freeman*, 897 F.2d at 346-47. Under Missouri law, only peace officers and prosecuting attorneys may apply for search warrants. *Id.* at 347 n.2. Despite the lack of state authority to do so, the special agent applied for a search warrant, submitting a supporting affidavit establishing probable cause for the search. *Id.* at 347. The search warrant application identified the applicant as a special agent with the state Department of Revenue, but it did not indicate that the special agent was not a peace officer. *Id.* A state judge issued a warrant directed to "any peace officer in the state of Missouri." *Id.* With the assistance of a state police officer and a county deputy sheriff, the special agent executed the search warrant and seized evidence as a result. *Id.* The defendant moved to suppress on the ground that the special agent was not statutorily authorized to apply for or execute a search warrant. *Id.* The district court denied the defendant's motion and the Eighth Circuit Court of Appeals affirmed, noting that "the magistrate found that [the special agent], although unauthorized to apply for and execute a search warrant, carried out the application and execution in good faith, believing that he possessed authority to do so." *Id.* at 350. I similarly find here that Deputy Radmaker acted in good faith in applying for the GPS warrants, believing that he possessed the authority to do so. Thus, I find that Deputy Radmaker did not deliberately and intentionally violate § 808B.5(12) in applying for the GPS warrants, and suppression of the evidence is not required. Hansen's objection is denied.

### 2. *Does Leon's Good Faith Exception Apply?*

Hansen also argues that, if I find that Deputy Radmaker deliberately and intentionally violated § 808B.5(12) in applying for the warrants, I should also find that Deputy Radmaker's actions do not qualify for the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984).

In *Leon*, the United States Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. *Leon*, 468 U.S. at 922–23. *Leon's* good-faith exception does not apply:

> "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge 'wholly abandoned his judicial role' in issuing the warrant; (3) when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*'; and (4) when the warrant is 'so facially deficient" that no police officer could reasonably presume the warrant to be valid.'"

*United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (emphasis in original)). Because, for the reasons discussed above, I have found that Deputy Radmaker did not deliberately and intentionally violate § 808B.5(12) in applying for the warrants, I decline Hansen's invitation to speculate on the applicability of the *Leon* good faith exception under a different set of facts.

### *III. CONCLUSION*

Therefore, for the reasons discussed above, I, upon a de novo review of the record, accept Judge Strand's Report and Recommendation and deny defendant Hansen's motion to suppress.

**IT IS SO ORDERED**.

**DATED** this 31st day of July, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA